### DOIG v. SUTHERLAND et al.

(Circuit Court, S. D. New York. May 18, 1898.)

**1. Patents—Operative Device—Reconstruction of Claims.**
If a claim can be interpreted so as to describe a practical device only by striking out a portion thereof and transposing other words, this cannot be done as against the public, especially where it has been allowed to stand for 10 years without taking measures for its correction.

**2. Same—Box-Nailing Machines.**
The Doig & Smith patents, Nos. 276,639 and 342.268, for box-nailing machines, construed, and the former *held* not infringed as to claims 4 and 7, and the latter *held* valid and infringed as to claims 1, 3, 5, and 6, and void as to claim 2 for want of novelty.

This was a suit in equity by William S. Doig against Eugene Sutherland and the John J. Hayes Machine Company for alleged infringements of certain patents relating to machines for nailing boxes.

Wilson W. Hoover and Charles G. Coe, for complainant.
George M. Brooks and Wm. Raimond Baird, for defendants.

TOWNSEND, District Judge. The patents in suit, Nos. 276,639, dated May 1, 1883, and 342,268, dated May 18, 1886, granted to complainant and one Thomas L. Smith, relate to a series of devices used in machines for nailing boxes, the great desideratum therein being economy of time. These machines comprise generally a nail pan for receiving the nails, nail ways for conducting them to the cut-outs, a cut-out so arranged as to separate individual nails and place them in the nail chutes, and other devices not necessary to be here considered. The complainant, by his later patent, No. 342,-268, improved on the prior art by introducing into the nail chutes a series of overlapping joints in the nail ways in place of the earlier flush joint, and, in connection therewith, open journals for the bearings of said nail ways, thus insuring better delivery, and obviating the objections of breakage. These two improvements, operating together, were especially useful in enabling the machine to automatically free itself, when it became clogged from damaged nails, thus promoting certainty of operation. This construction is covered by claims 1 and 3 of said patent No. 342,268, which are as follows:

"(1) In a box-nailing machine, substantially as described, a nail-supply pan, as O, arranged in rear of the nail-feeding device, P, and having pivots, o, supported in open journals, p', the said pivots being arranged to rise freely when the nail-feeding device becomes clogged, as herein set forth."

"(3) The combination, with a nail-feeding mechanism provided with plates forming nail ways, of a nail-supply pan, also having plates in its bottom forming nail ways, the said supply pan being pivoted in the automatic vertically adjustable bearings at the rear of the nail-feeding mechanism, substantially as and for the purpose described."

The defendants use overlapping joints, but do not use open journals. Instead thereof, they use conical screws, which, in the jar of the wear of the machine, necessarily loosen, and thus make loose joints, which are then the equivalent in operation of the open journals of complainant. No reason is suggested for this unmechanical and defective construction, and the only effect thereof is to permit this loose motion, and thus to obtain the advantages of the complainant's patent. The defendants' machine infringes said claims 1 and 3.

That the patent to Sullivan does not anticipate complainant's construction, is admitted. That Rogers' patent does not anticipate is satisfactorily proved, because, among other reasons, not only do the drawings and models show that it had no overlap, but, even if it could have had an overlap, it could not have been, in any sense, the overlap of the patent in suit. In complainant's patent, there is no claim which covers the combination of overlapping joint and open journal. Claim 2 of said patent, for the overlapping joint alone, is void for lack of patentable novelty.

Claims 5 and 6 of said later patent cover a construction of way plates so arranged in series as to be adjustable laterally in relation to each other, said way plates being arranged in the form of two frames operated upon laterally by screws in such a way as to adjust said machine to various sizes of nails. By this arrangement each way plate was adjusted to the same size as the others during its entire length by the operation of a pair of screws. Said claims are as follows:

"(5) The combination, in a nail-feeding mechanism, of a frame or support provided with a series of way plates with a second frame or support, also provided with a series of way plates, the way plates of the said frames or supports being arranged to act in pairs to form nail ways, one series being adjustable in relation to the other laterally, substantially as and for the purpose set forth.

87 F.—63

"(6) The combination, with the nail-feeding mechanism, of a pair of way plates supporting frames adjustable laterally one in relation to the other, and the frame-adjusting screws, substantially as shown and described."

The defendants' claim that this construction is anticipated by the prior Swan patent is not supported, for the following, among other reasons: The Swan patent was issued in 1876,—10 years before the patent in suit. It was a mere paper patent. It is not capable of successful practical operation. Its specifications and drawings do not correspond, and the model introduced in evidence is neither like the specification nor the drawings, and is not shown to be like the patent-office model. If it had been an easy thing, as defendants' counsel argues, to construct from the Swan device the device of the patent in suit, it would seem, considering the manifest advantages resulting from such construction, that some ·one would have discovered it during the 10 years before the grant of the later patent in suit. The Swan device does not show a rigid frame. Its screws work separately, and it therefore does not provide the ·means for simultaneous adjustment of a frame by a single operation, which characterizes the complainant's device.

The defendants use a device patented to one of their officers some 10 years after the issuance of complainant's patent. This device is practically the construction of the complainant's patent plus a cam used in connection with its screws, and is equivalent thereof, or at most an improvement thereon. I find that claims 5 and 6 are valid, and are infringed by defendants.

Complainant contends that claims 4 and 7 of the earlier patent of 1883—No. 276,639—are infringed. The fourth claim covers what are known as "supplementary track plates," and is as follows:

"(4) The combination, with the track plates, of the supplementary track plates, g', arranged below them to form a guide track for the bodies of the nails, substantially as and for the purposes set forth."

These track plates are guides fastened below the main nail plates for the purpose of holding the nails in a vertical position in their downward passage towards the nail chutes, and especially of resisting the action of the pin or cut-out when it passes horizontally between the nails. In view of the prior art as shown by the Swan and Rogers patents, I think that this device does not involve invention. In the earlier device there were no supplemental guide plates, but the guide plates themselves were constructed so as to operate on the same principle. All that the complainant did was to fasten a couple of pieces onto the bottom of a guide plate constructed substantially according to the guide plates of the prior art for the purposes above stated. In any event, and as the defendants' ·construction differs from that of complainant, and in view of the prior art, said fourth claim cannot be so broadened as to embrace the defendants' construction. This claim, therefore, is not infringed.

Claim 7 of said patent is as follows, and is intended to cover a contrivance which defendants admit involved invention, and which they would infringe if said claim were properly worded:

"(7) In a machine for feeding nails to a nailing machine, the tilting hopper, .arranged to be lowered at one nailing operation and raised at the next by

Fig. 1.

Fig. 3.

means of the cross-head, C, of the nailing machine, and the main shaft and crank which reciprocate it, a crank, h', driven from the main shaft, which drives the cross-heads, C, and at half the speed of said main shaft, and a connector, which couples the hopper with the said crank, h', whereby the said hopper is permitted to stand at rest in each position during the interval between nailing operations, substantially as set forth."

The invention consisted in an arrangement of the machine for so feeding the nails to the nail plates that they would not become clogged, and would not be drawn out. This is accomplished by means of the main shaft and crank and other mechanisms, which the claim states has been accomplished "by means of the cross-head, C, of the nailing machine," etc. The hopper is not raised or lowered by means of said cross-head in either the complainant's or defendants' machine. Complainant's expert admits that said claim can only be interpreted so as to describe a practical device by striking out a portion thereof, and transposing other words therein. It should not be so construed as against the public, especially as com-

plainant has left it for 10 years without taking any measures for its correction. The defendants do not infringe said claim.

Let a decree be entered for an injunction against both defendants, and for an accounting against the defendant corporation as to claims 1, 3, 5, and 6 of patent No. 342,268, and in favor of defendants as to claims 2 of patent No. 342,268, and claims 4 and 7 of patent No. 276,639; without costs to either party.