### DOIG v. MORGAN MACH. CO.

#### (Circuit Court, W. D. New York. April 28, 1902.)

1. PATENTS—INFRINGEMENT—BOX-NAILING MACHINE.

The Smith & Doig patent, No. 342,268, for a box-nailing machine, was not anticipated and is valid, but is so limited in scope by the prior art, as disclosed by the Swan patent, No. 180,503, and others, that the doctrine of equivalents cannot be invoked in its support as against the device of a patent subsequently granted, and therefore presumptively different. Claims 5 and 6, as so limited, construed, and *held* not infringed.

In Equity. Suit for infringement of letters patent No. 342,268, issued May 18, 1886, to Thomas L. Smith and William S. Doig, for a box-nailing machine. On final hearing.

For former opinion, see 89 Fed. 489.

Charles G. Coe, for complainant.
Frederick F. Church, for defendant.

HAZEL, District Judge. The patent in suit, No. 342,268, dated May 18, 1886, issued to complainant and one Thomas L. Smith, relates to improvements in box-nailing machines. It has special reference to receiving and distributing the nails, as well as to the nail conducting and driving mechanism described and shown in a prior patent issued to the inventors. Claims 5 and 6 of the patent are alone involved in this proceeding. They are as follows:

"(5) The combination, in a nail-feeding mechanism, of a frame or support provided with a series of way plates, with a second frame or support, also provided with a series of way plates, the way plates of the said frames or supports being arranged to act in pairs to form nail ways,—one series being adjustable in relation to the other laterally,—substantially as and for the purpose set forth.

"(6) The combination, with the nail-feeding mechanism, of a pair of way plates, supporting the frames, adjustable laterally one in relation to the other, and the frame-adjusting screws, substantially as shown and described."

An examination of the involved claims shows that this suit is concerned chiefly with a series of nail ways or channels formed by parallel plates attached flatwise to an adjustable frame called a "feeder." These plates are so adjusted laterally that the width of all of the nail ways may be simultaneously and uniformly established. In further explanation, it may be said that the nails prior to reaching the nail ways in the feeder are contained in a nail pan or hopper pivoted at the rear of the main frame of the machine. The nail hopper at its outlet has a slotted bottom, thereby forming nail channels which permit the nails to hang by their heads. They are carried along through the interstices by force of the oscillation of the nail hopper. The nail hopper is attached to the machine close to the feeder, and

inclined at an angle of 30°. The suspended nails rush downward through the interstices in the nail hopper, and thence along the interstices in the nail feeder, which joins the nail hopper and is set at the same angle. The nails are thence discharged into perpendicular chutes, their course being regulated by a cut-off device at the discharge end of the feeder. From the chutes they pass into nail boxes, and while held there in a vertical position are driven by nail punches into the boxes in process of construction. The prior art, as will hereinafter appear, discloses devices showing equivalent arrangements of track plates used as nail ways. These are regulated by screws at the ends to adjust the width of the nail channels, and thus facilitate the passing or sliding of the nails suspended by their heads along these tracks. The patentee claims that the track plates of the prior art required an individual regulation. That is to say, each track or plate was regulated by separate screws. The improvement of a simultaneous adjustment of the nail plates eliminated the former result of improper and irregular alignment, which produced loss of time and annoyance. The improvement claimed by the patentee is a means of securing an alignment of the plates by momentary action. The defense is noninfringement and noninvention. The limits of the prior art are quite extensive. They are not urged, however, by defendant in anticipation of the involved claims, but only to narrow and restrict claims 5 and 6 of the patent to their actual construction and application. Among the patents shown by the defendant, illustrative of the prior art, is the Swan patent, No. 180,503. This was considered by Judge Townsend in Doig v. Sutherland (C. C.) 87 Fed. 991, and held by him not to be anticipatory. He declared it to be a mere paper patent, incapable of successful and practical operation. He assigned as a reason for his conclusion, among others, the failure of the specifications and drawings of the Swan patent either to correspond to the model in evidence or to the patent-office model. Judge Townsend pointed out structural differences between it and the Doig patent then before him, and now here under consideration. The court then observed that the Swan device disclosed no rigid frame; that its screws worked separately, and therefore no means were provided for simultaneous adjustment of the plates. I agree with Judge Townsend as to the differentiating features of the Swan device. It embodies a frame or support provided with way plates or tracks adjusted laterally so as to permit different sizes of nails to move longitudinally along the way plates or tracks toward the nailing device. The nail plates are attached to frames, and are so arranged as to form a narrow track, down which the nails move, hanging by their heads. One of the tracks or way plates is fixed rigidly to the supporting frame, and the other is movable longitudinally. This movement of the plates is caused by the rotation of a cam shaft at the rear end of the frame and nail tracks, which forces the hanging nails to slide toward the nailing device. The plates are adjusted by the manipulation of screws and nuts at both ends of the supporting frame or bars. Separate loosening and adjusting of the screws and nuts are necessary to effect the width of the nail ways, so as to insure an alignment of the plates or tracks

suitable to the size of the nails used. It is clear that the Swan device could supply the nail at the nailing point after a fashion, but clogging of nails in the nail way impeded their course, the manner of adjusting the frames interfered with the nailing, and at each change of nails a readjustment of the plates was necessary. By complainant's device two sets of way plates are so arranged in relation to each other as to form a series of nail ways permitting a lateral adjustment, by which the width of the plates in series is simultaneously adjusted to conform to the size and kind of nail used. No mechanical arrangement of the device requires a separate or individual adjustment. Two screws are attached laterally, and may be manipulated by the operator simultaneously,—one for moving movable way plates of the nail receptacle or feeder in one direction, and the other for moving them in the other direction, thus increasing or decreasing the interstices through which the nails are hung. I think that the complainant's device was a step forward in box-nailing machines over the Swan patent, increased the capacity of the machines, and in other ways enhanced their utility. It must, nevertheless, in view of the practical use shown in this case, be considered as restricting the scope of complainant's claims. No evidence of the operativeness of the Swan machine was before Judge Townsend. He accordingly found that the Swan patent was not practicable. The proofs now show quite satisfactorily that the Swan machine was successfully operated on different kinds and sizes of boxes at the mechanics' fair held at San Francisco in October, 1875, and afterwards at the factory of the Union Box Company. It further appears by defendant's proofs that subsequently Swan constructed another nailing machine similar to, the first, and sold the same in 1877, an accurate model of which was filed with his application for patent. The Swan machine was in practical use during the years 1875, 1876, and 1877. The complainant attempts to show that the specifications and drawings of the Swan patent do not show an operative machine, and that Swan admitted the specifications and drawings to be defective in various particulars. Nevertheless he testified that the Swan model in evidence disclosed the nailing machine, and that, in his judgment, the specifications of the patent are ample to enable a skilled mechanic to make and use the invention. Other proofs show that the patent is sufficiently specific to permit a practical mechanic skilled in the art to construct therefrom an exact model.

I now come to consider the Howard patent, No. 219,863, and other patents which in my opinion must have an important bearing in limiting the scope of claims 5 and 6 of the patent in suit. An improvement is shown upon a former Howard patent, No. 196,456, for nail assorters or nail separators. It consists of a cylindrical screen, having an inner and outer set of bars, the opposing faces of which are flat or fitted close to each other. This construction forms what may be considered as analogous to the nail bars or plates. These bars or series of plates are connected for simultaneous adjustment in relation to each other, and permit the desired opening or closing of the interstices. The inner bars or plates are V-shaped, but present a flat surface, and are even with the main or wider bars. All are sup-

ported by rings having a device and means for simultaneous adjustment of the cylinders in relation to each other. This adjustment governs at the same time the width of the slits. These devices may be cylindrical or flat. By the action of the adjusting screws the frames may be moved simultaneously one way or the other. I think that the analogy between the later Howard device and the device of the complainant is not remote. When the adjusting screw is turned, the interstices are reduced by moving the outer plates. Were this device worked out on a plane surface, the adjusting screws would be lateral. It is stoutly insisted that, as the device is cylindrical, it would not work as a nail feeder. Doubtless some alteration would be required, but none that would not readily occur to a skilled mechanic familiar with box-nailing machines. In the Chess patent, No. 145,720, for improvement in nail-separating devices, an adjustable screw is used laterally to narrow or widen longitudinal grooves. The Bumbaugh United States patent, No. 171,213 (improvement in nail separators), consists of a revolving cylinder, permitting nails to drop through V-shaped grooves, which are adjustable by means of plates or screws attached to the frames. This device shows that perfect nails pass along the V-shaped grooves, and are deposited at the end of the separator, in a suitable receptacle. The Chess United States patent, No. 185,894 (improvement in machines for assorting nails), embraces an exact adjustment of the size of the openings while the separator is in motion. The slots are adjusted by longitudinal movement of the outer ring with a series of blades either from or toward the inner or main ring, C. By the adjustment of the slots, their width is reduced simultaneously as desired. The Smith & Doig patent, No. 276,639 (improved feeder for nailing machines), speaks of the arrangement of the track plates so that they may be readily adjusted to suit nails or tacks of different sizes. These references were not in evidence in the Sutherland Case, and therefore not considered by Judge Townsend. In view of the state of the art, complainant must be precluded from invoking the doctrine of equivalents as applied to the defendant's device, which was subsequently patented, and therefore raises a presumption that there is substantial difference between them. Illinois Steel Co. v. Kilmer Mfg. Co. (C. C.) 70 Fed. 1012; Wellman v. Midland Steel Co. (C. C.) 106 Fed. 226. The defendant's device shows a mechanism by which the nails are fed down the track plates by gravity alone. It has neither of the frames described in claims 5 or 6. One set of these way plates is rigidly fixed to the main frame of the machine. The second frame or support in complainant's device, and by which the movements of the plates attached thereto are regulated, is not found in defendant's device. The way plates are moved and guided in defendant's device by an overlying bar with a screw adjustment, stretching through the middle from one end of the device to the other. This bar, with screw attached, regulates the way plates, and really performs the function of the frames or support, with lateral adjustment of complainant's device. The complainant, however, was not a pioneer, and therefore cannot insist upon a broad construction of his claims. Neither way plates forming nail ways nor adjust-

able way plates were new. As has been pointed out, the feature of simultaneous adjustment by arrangement of the plates in series is disclosed by analogous invention.

The claims of complainant's patent involved in this proceeding are therefore not infringed by defendant's device, and a decree dismissing the bill may be entered accordingly.