## BROWN BAG–FILLING MACH. CO. v. DROHEN.

(Circuit Court, W. D. New York. August 12, 1905.)

1. PATENTS—INVENTION AND INFRINGEMENT—BAG-FILLING MACHINE.

The Cummings patent, No. 539,171, for a machine for filling paper bags with seed or other fine material, covers a combination of many elements, some of which were old and others new, but which, acting in co-operation, constitute the first practically operative and successful machine for accomplishing the desired result, and in such sense is for a primary invention, and entitles the patentee to invoke the doctrine of equivalents with respect to a substitution of parts which perform the same functions in the combination. The patent construed, and *held* infringed.

2. SAME—IMPROVEMENT PATENT.

The Brown patent, No. 578,133, for an improved folding mechanism for use with the bag-filling machine of the Cummings patent, No. 539,171, *held* valid and infringed.

In Equity.

Roberts, Becker, Messer & Groat (Nathan Heard, of counsel), for complainant.

J. L. Hurlburt and J. C. Sturgeon (H. M. Sturgeon, of counsel), for defendant.

HAZEL, District Judge. This is an action to enjoin the infringement of two United States letters patent owned by complainant, No. 539,171, issued to Henry H. Cummings, dated May 14, 1895, and No. 578,133, issued to Benjamin F. Brown, dated March 2, 1897. The earlier patent has 81 claims, and relates to automatic machines for filling paper bags with seed or other fine material. The later patent relates to a folding mechanism for use in connection with bag-filling apparatus such as shown in the Cummings patent, but, according to the specification, it may be used on other forms of bag-filling machines, or generally to fold and paste a bag or other paper article at its fold. The complainant's construction, substantially embodying the claims of the Cummings patent and the folding mechanism of the Brown invention, is in evidence as an exhibit, and was operated in the presence of the court. The bag-filling apparatus of the defendant, which was patented July 8, 1902, on an application dated August 19, 1901, is in evidence as an exhibit. Complainant contends that the defendant's exhibit machine in some parts is unlike that which it actually uses, specially in relation to the bag opener, which in the former is claimed to be firmer than in the latter. This conceded departure by defendant from his machine as photographed, in view of the decision reached, may be regarded as immaterial.

The principal defenses relied upon are defective or insufficient description of claims, noninfringement, aggregation of devices, and want of patentability. Consideration of the questions presented does not require the court in this opinion to set forth in extenso the involved claims of the Cummings patent, 25 in number, as their characteristic and essential features relate to the mechanism and details of construction. The involved claims may, however, be

grouped as follows, and one claim set forth under each subdivision of such classification: Claims 14, 53, and 54 involve mechanism relating to a bag opener. Claim 14 reads as follows:

"(14) A hopper, a measuring device therein, and means to move the said measuring device, combined with a funnel having a snout and adapted to receive the contents of the measuring device. and a bag opener to enter and hold open the mouth of the bag to be filled, in order that the snout of said funnel may enter inside of and thus direct into the bag the seed discharged into the measuring device from the hopper, substantially as described."

Claims 1, 2, 6, 13, 8, 9, 18, and 75 specifically refer to a flexible bag opener. Claim 1 reads as follows:

"(1) In a bag-filling machine, means to present a bag to be filled, combined with a flexible or yielding bag-opener to enter the mouth of and open the bag to be filled, substantially as described."

Claims 29, 30, 24, 53, 61, and 41 relate to the lip-folding mechanism. Claim 29 reads:

"(29) In a bag-filling machine, a guide-box to present a bag to be filled: an elastic bag-opener; a pasting device to paste the bag; and a folding-bed and folding-blade, combined with a clamp to clamp the filled bag upon the folding-bed while the folding-blade acts against the bag, substantially as described."

Claims 11 and 12 refer to a bag-spreading device. Claim 11 is in the following language:

"(11) Bag-presenting mechanism to present a bag to be filled, combined with a bag-opener, and with independent bag-spreading devices adapted to enter the mouth of and hold the bag open while being filled, to operate substantially as described."

Claims 16, 17, and 19 involve what is known as a "bag carrier"; claim 16 providing:

"(16) A bag-filling machine containing the following instrumentalities, viz., a. bag-opening device to enter the open end of and pick a bag off from a series of bags; an independent funnel having a snout to enter the mouth of a bag opened by the opening device; and a bag-carrier to engage the filled bag and take it from the bag-opening device and present it in position to be folded, substantially as described."

Claim 23 relates to an adjustable follower, and claims 34 and 35 to the pressing device to hold back the lower ends of the bags and guide-box. Claims 23 and 34, respectively, read:

"(23) A guide-box to receive a series of bags; and a sliding foot therein, combined with an attached follower, adapted to conform to variations in the thickness at the side edges of the series of bags and made vertically adjustable with relation to said foot to co-operate with bags of different length, substantially as described."

"(34) A guide-box to present a pile of bags to be filled; a follower to keep the said bags pressed forward; and a bag-opener, combined with a pressing device to press upon the lower end of the endmost bag of the pile of bags to aid in putting the same into proper position with relation to the bag-opening device, substantially as described."

Claim 20 refers to the specific pasting mechanism, and reads:

"(20) A guide-box to present a series of bags, and a pasting device consisting of a bar having a series of yielding or spring-supported pins, combined with the paste-box, its paste roll and means to actuate the paste roller and present paste to the said pins, substantially as described."

The patent to Brown is an improvement on the folding-bed mechanism and lip-folding device of the Cummings patent. The claim in controversy reads as follows:

"(1) In an apparatus for folding, a folding-blade or device, a folding-bed, means to rotate said bed, a series of nip-rolls lying against the periphery of and surrounding said bed and movable therewith, combined with means to move each of said nip-rolls over the surface of said bed independently each of the other of said nip-rolls, as and for the purposes described."

By the folding-bed operation of Cummings but a single bag can be held in position after the material is discharged therein until it is moved to the place of release or discharge. The invention of Brown, however, provided a rotatable folding-bed which revolved intermittently, and was adapted to hold in position six or more filled bags, together with a device for folding the lips or flaps of the bags and sealing the same. In short, the Cummings patent was adapted to make a single fold before releasing the bag, while the Brown invention enabled holding a series of filled bags before they were released by the nip-roll. The improvement resulted in quicker operativeness, and, according to the evidence, in connection with the self-acting mechanism of the bag-filling machine, permitted the filling of 30,000 flat paper bags with seed or other fine material in about eight hours.

The method of operating the complainant's machine, omitting nonessential features, is sufficiently understood from the following: The bag-opener, consisting of a slightly curved so-styled "tapering finger," about seven inches long, is firmly attached to the rear side of the funnel, and projects in front thereof. In operation its function is to enter the bag for the purpose of separating the plies. The finger and funnel are arranged to rapidly reciprocate in the arc of a circle, and at each downward movement the finger and snout of the funnel enter the outmost of a series of bags, and conveniently part its plies. As the snout of the funnel enters the bag, the material is discharged therein. The tapering finger or bag-opener is preferably flexible or elastic, in that it slightly yields when coming in contact with what is known as the lip-holding device. Much flexibility or elasticity of the tapering finger is not desirable. Merely a slight yielding thereof is essential to the proper performance of its functions, as otherwise the flap of the bag is liable to tear or crumple, which obviously would result in failure to seal the bag or would retard the folding process. The paper bags are held close together in an upright position under the guide box or inclosing frame, and firmly pressed forward with the movements of the machine by a follower device, which insures the replacement of a bag that has been filled or charged with material by the next succeeding bag. The specification describes a reciprocating guide box as being preferable, although in practice it is stationary, and the proofs show that reciprocation is not essential to its operativeness. When a machine is put in motion, a measuring device, provided with movable cups, dumps or discharges the measured material from a cylindrical hopper or chute into the reciprocating funnel. The hopper is firmly located at the upper part of the machine, and conjointly

performs its functions with other numerous operative parts. The measuring of the material, discharging same into the funnel, opening and feeding of the bags, gumming, folding, and sealing thereof by what is known as the bag-carrier, and then transferring the filled bags to the place where they are released from the machine, are separate and distinct automatic operations following in rapid succession. Many details and small parts of the machine are combined and operated connectedly to produce the ultimate result. An exact description of such coacting parts and of the actuating means of the complainant's structure, except in a general way, is not attempted. The essential elements of the patent are dependent upon each other to successfully and practically in combination perform their special function. And, as said, the connected instrumentalities are assembled in such manner as to rapidly operate step by step the process of charging and sealing the bag, apparently in spontaneous succession and in accurate time.

The defendant claims that the prior art completely indicates the essential mechanism of an operative automatic bag-filling machine, and that the patents to Hammersley, No. 395,390, dated January 1, 1889; Hill, No. 278,133, dated May 8, 1883; J. C. Brown, No. 319,-672, dated June 9, 1885; J. C. Brown, No. 354,094, dated December 14, 1886; and B. F. Brown, No. 342,811, dated June 1, 1886— fully describe a successfully operative bag-filling machine, and, conceding there were objections and imperferctions therein, that they were removable, and could be supplied by ordinary mechanical skill. The evidence and state of the art, however, does not support this claim, but is persuasive that the prior art has not produced a complete and operative invention capable of being put into practical operation. The Cummings patent in suit, in my opinion, is for a new machine or combination which produces a new and useful result, entitling the patentee to invoke the doctrine of equivalents. The claims secured by the patentee are such that in the determination of the question of infringement by defendant's apparatus the forms and dissimilarities of construction are not controlling. As was stated in Kinloch Tel. Co. v. Western Electric Co., 113 Fed. 652, 5 C. C. A. 362:

"The similarities and differences of machines and combinations are to be determined by the offices or functions which they perform, by the principles on which they are constructed, and by the modes which are used in their operation. A device which is constructed on the same principle, which has the same mode of operation, and which accomplishes the same result as another by the same or by equivalent mechanical means, is the same device, and a claim in a patent of one such device claims and secures the other." Citing Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935.

The apparatuses of Hammersley, Brown, and Hill were substantially similar constructions to that described in the patent to Cummings, but, according to the evidence, they were incapable of performing the same function. They were not a commercial success, and in the circumstances here presented the objection of aggregation of the claims of the Cummings patent is not thought to be tenable. S. F. Heath Cycle Co. v. Hay (C. C.) 67 Fed. 249; Reck-

endorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719. In this state of the situation, what meed of praise shall be accorded to the inventor who uses various elements familiar to the art, together with a new and useful element, and assembles them to produce a successful result? The evidence is convincing that something in the nature of a final step was needed to enable the prior inventions to perform the object for which they came into existence. In Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, the Supreme Court said:

"It may be laid down as a general rule, though perhaps not an invariable one, that, if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention."

In the Barbed Wire Patent, 143 U. S., at page 283, 12 Sup. Ct., at page 446, 36 L. Ed. 154, it is said:

"In the law of patents it is the last step that wins. It may be strange that, considering the important results obtained by Kelly in his patent, it did not occur to him to substitute a coiled wire in place of a diamond-shaped prong, but evidently it did not; and to the man to whom it did ought not to be denied the quality of inventor."

The patentable novelty of the claims which include the bag-opener device cannot be seriously disputed.

The hopper, measuring device, and funnel, in connection with an automatic bag-filler, were concededly old. They are found in the 1885 and 1886 patents to J. C. Brown, and also in the patents to Hill and Wilson, No. 230,378, dated July 20, 1880. Although the end of the funnels of Brown and Hill patents were intended to be used as a bag-opener, the funnels are not dissimilar to that employed in the Cummings patent, which, however, as stated, has the additional feature of a long, tapering finger projecting beyond its snout. True, the prior inventions contributed much to the art of paper-bag filling, but they wholly failed to successfully meet the requirements on account of the employment of an unsuitable bag-opener and means to operate the same. The alteration or substitution of one form of bag-opener for another may have been a very slight and simple thing, but by that change the patentee achieved success. It was not a change of form such as would ordinarily occur to a skilled mechanic, but rather a meritorious step and advance in the art, and should be so recognized. Doig v. Sutherland (C. C.) 87 Fed. 991; Gormully & J. Mfg. Co. v. Stanley Cycle Mfg. Co. (C. C.) 90 Fed. 279; Consolidated Safety-Valve Co. v. Crosby Steam-Gauge & Valve Co., 113 U. S. 157, 5 Sup. Ct. 513, 28 L. Ed. 939. Such features as were old were, nevertheless, necessarily associated with other mechanical parts of the machine in controversy, and therefore the complainant in their use under his patent is entitled to the protection of the patent laws.

The patents mentioned were considered by the Patent Office at the time the application of Cummings was filed, and, together with the Cummings file wrapper and contents, are relied upon by the defendant to so limit the claims of the patent in suit that the defendant's apparatus is not within their scope. This contention, however, is of doubtful force when the inoperativeness of the machines described in the prior patents is considered. The complainant

claims that the machines described in the patents hereinabove mentioned were crude and impracticable; that a working mechanism conformable to their specifications has never been constructed, and in fact the patents were mere paper representations, their utter inoperativeness being disclosed by the specifications and proofs.

The patent to Hammersley will be first considered. His conception seemingly embodies an automatic bag-filling apparatus and means for folding and sealing the bags after they are filled. Evidently his purpose was to construct an automatic bag-filling machine, and one that would seal the bag directly after being filled; but the specification of the patent supported by the oral evidence is convincing that he failed to successfully solve the problem. The machine, from a viewpoint of practical working mechanism, was incapable of successful operation. According to the specification the apparatus was not provided with an automatic feed to supply the bags in succession to the machine. The evidence shows that they were fed or adjusted by hand while being held in an upright position. The specification describes a funnel or nozzle which descended by gravity and was inserted between the plies of the bag before the material was discharged therein. The evident intention of the patentee was that the nozzle operated by gravity would readily enter the bag between the plies. In practice, however, this operation was unsuccessful, as no actuating means were provided to effect the downward movement of the funnel toward and into the upper end of the bag. Upon this point complainant's expert witness Mr. Haines testified:

"The funnel carrying the charge of seed acts entirely by gravity. It is loosely mounted on its support, h, so that its lower end may swing lengthwise or in the plane of the belt or bag. These two objections, mechanically speaking (the manner of mounting the funnel and carrying the same by gravity), would ordinarily be vital defects, since the uncertain action of gravity would preclude positiveness of operation, and the free swinging movement permitted to the funnel would at all times render uncertain its movement in the same vertical direction, a movement which it should have to successfully and practically fill bags with seed."

This testimony finds support in the implications arising from the specification, it being quite manifest that the nozzle or funnel in descending to the bag would pass either outside of the lower ply, or, entering it, would crumple or tear the bag. The modified form of Hammersley in principle is not unlike that already briefly mentioned, and the details of construction are quite similar. The funnel in the modified structure travels in a groove to enable the descent of the nozzle into the bag by gravity, and slides with the bag, meanwhile depositing the contents of the funnel therein. A pile of bags with their flaps resting against a guide were arranged in a feed box, and, in order to allow the plies to open, were pressed forward by a follower. This arrangement, it was thought, would enable the end of the nozzle to dexterously drop into the bag, simultaneously expelling its contents through an opening in the side. The proofs show that this modification also was incapable of entering the bag without tearing or wrinkling it. The principal difficulty with the

Hammersley structures was the omission of the patentee to supply a bag-opener to separate the plies of the bag to enable the funnel to perform its function. However capable of operation the various other assembled parts, its practicability as a bag-filling machine was entirely dependent upon the facility and ease with which the funnel entered the bag between the plies. Plainly, a contrivance, nozzle or funnel, which could not rapidly and deftly part the plies, would in its downward movement be obstructed at the lower ply of the bag, and would, in its operation, result in tearing and improperly detaching the bag from the collection in the feed box. The bag-folder described in the Hammersley patent was stationary, and employed a type of hemmer to move the bag edgewise in order to fold it. Such form of bag-folder would be impracticable in the device described in the Cummings patent. No one ever saw either method claimed by Hammersley in operation. Indeed, witness Landreth, one of the patentees, testified to the making of models of the Hammersley machine in 1888. He says the models were crude; and the work of construction was abandoned because of existing imperfections and obvious impracticability. Such testimony, standing alone, may not be sufficient to establish the incapacity or incompleteness of the apparatus in question, yet, considered in connection with the drawings and specifications, together with the testimony of complainant's expert witness, it has probative weight. Therefore the invention, on account of the inability of the inventor to practically carry out his conceptions, must be classified as a mere paper patent.

In the patent to Hill is described, inter alia, what is called a bag-cylinder, which rotates intermittently, associated with a receptacle for holding bags, which are placed therein in an upright position by hand. When the cylinder revolves, the lip of the bag first comes in contact with a pasting device, and then the lip of the bag is held and a blast of air is blown into the bag, the seed being discharged therein. Thereupon, by suitable means, a closing plate is operated to close the plies, and upon "further rotation of the cylinder, e, the closing-plate was to be suddenly retracted from its position against the bag by means of the spring, j, and thereafter the sealing bar was to be given a sliding movement bodily downward by means of a cam, M." The object of the patentee by this movement of the sealing bar was to carry the lip of the bag over the shorter ply in order to seal the bag. A preponderance of the evidence shows that this arrangement was impracticable, and wholly unsuited to make efficient the combination of the Cummings patent in suit. The folding-blade of the complainant's patent is not the equivalent of the closing-plate of the Hill patent, nor was the sealing-bar mentioned capable of performing the functions of the folding-blade of the patent in suit. It will be noted that in the Hill patent no bag-opener is shown, but reliance is had upon a blast of air to open the bag. The machine has no funnel, but simply uses a discharge chute from which the material is directly dumped into bags; and, moreover, the bags are not fed in series or pressed by a follower-

device, nor is the gumming of the bag upon the lower ply, as in the patent of Cummings, but instead is upon the lip.

In the J. C. Brown patent of 1885 the object of the patentee, as stated in the specification, was to provide an air-tight receptacle to contain the powder for the purpose of mixing before being delivered to the measuring device. The specification describes none of the essential features of the patent in suit, although it has a measuring device for placing predetermined quantities of seed in a funnel for delivery to the bag. It has no automatic feed of the bags, nor is the bag opened by any such means as disclosed in the patent in suit.

The J. C. Brown patent of 1886 has the features of the patent of 1885, and has an automatic feed mechanism for bags and means for raising the funnel by the action of gravity, as shown in the Hammersley patent. No bag-opener is described in this patent, nor means for folding and sealing the bags. It will be observed that in the Brown patents reliance for discharging the material into the bag is placed on the end of the funnel for separating the plies of the bags.

In the B. F. Brown patent of 1886 the specifications provide a means to apply paste to the lower surface of the lip of the bag, first receiving the filled bags fed to it by hand or automatically. Paste is applied to the bag by moving it edgewise past a gumming device, and then the lip of the bag is turned downward under a curved plate, and the bag being moved edgewise under a pressure roller to complete the sealing. In distinguishing the Brown devices and that of Hammersley from complainant's mechanism, complainant's expert witness Haines testified:

"They both used the uncertain gravity-acting funnel; they both used the end of the funnel itself as the contemplated means for opening the plies of the bags; they both employed the edgewise moving bag in carrying out the operations upon it; they both had a stationary lip-turning device in general resemblance to a sewing machine hemmer, through which the bag moved edgewise; they both had a presser roller which bore against the lip of the bag as the latter was moved edgewise past it, and they both depended upon this simple sealing under the pressure roller to accomplish the final results."

The patentee in suit, by his adaptation of (1) the projecting finger at the end of the funnel, and means to operate it to enter the endmost bag at the end of the bag-presenting mechanism, (2) the downward movement of the bags after filling for the purpose of sealing, (3) the movable folding-blade which securely holds the bag against the folding-bed, and (4) the actuating means for turning down the lip of the bag upon the lower ply, together with complainant's method of applying the paste to the bag, effectuated a departure in principle from that disclosed in the prior art. Such departure or alteration was not merely an improvement, such as would have occurred to a mechanic familiar with the art. Gandy v. Main Belting Co., 143 U. S. 587, 12 Sup. Ct. 598, 36 L. Ed. 272; Farmers' Mfg. Co. v. Spruks Mfg. Co., 127 Fed. 691, 62 C. C. A. 447; Sayre v. Scott, 55 Fed. 971, 5 C. C. A. 366. The element which contributed most to the success of the machine is the bag-

opener. This element is included in 20 claims, in 9 of which it is described as flexible. The defendant vigorously contends that, in view of the restrictions placed upon the claims by the Patent Office, the claim including the element of a flexible bag-opener must be strictly construed. Such a construction would not bring defendant's device within their scope. The specification of the Cummings patent states:

"This invention is not limited to the exact shape shown for the bag-opening device. * * * The bag-opener in this, my invention, is a positive device, and enters the bag between its two plies, and acts very differently from a blast of air blown at the mouth of a bag. * * * This invention is not limited to the exact shape shown for the flexible bag-opening device."

There is no express limitation as to the shape of the bag-opener, although by the context of the specification it appears that the patentee regarded the flexibility of the device of prime importance. The successful operation of the machine depended undoubtedly to a degree upon the flexed finger which comes in contact with the lip-holding device just before entering the bag, and I am satisfied that the characteristic distinction between the bag-opener of Cummings and of the prior art is the flexed finger which projects beyond the end of the funnel, although the element of flexibility is not thought essential. The defendant uses such a device. The testimony of Mr. Haines and his demonstration show that the bag-opener of the defendant flexes to a slight degree in its downward movement when coming in contact with the outmost bag. That the defendant's bag-opener in operation descends vertically, instead of in an arc of a circle, as in complainant's machine, in view of the specification, which expressly states that the bag-opener is not limited to the exact shape, is unimportant. Hence the defendant's device or bag-opener is an infringement of complainant's bag-opener device, irrespective of any flexibility or nonelasticity.

The lip-folding mechanism of the Cummings patent, which, as stated, is involved in claims 29, 30, 24, 61, 41, and 53, permitted the pasting of the flap of a single envelope, while the improvement of Brown allowed a series of bags to be manipulated at practically the same instant. Except as indicated, the folding mechanisms of the Cummings and Brown patents are substantially alike. Claim 53 reads as follows:

"(53) In a machine for filing bags the following instrumentalities, viz., a guide-box to receive a series of bags, a bag-opener, devices to move said bag-opener and cause it to enter the mouth of the endmost bag of the series and remove it from said guide-box, a bed located below and at the end of said box, a folding blade to impinge a part of the bag against said bed, and a device to act against the lip at the end of the bag and lay the same over the body of the bag, substantially as described."

After the pasting or gumming operation, which occurs while the bag is an upright position in the guide-box, and just before the tapering finger is inserted therein, it is quickly carried underneath the guide-box, where it is momentarily held, and then folded by the lip-turning device. The contributing elements are the actuating means by which the lip or flap is turned and held in position after

pasting; a cylindrical folding bed, which operates intermittently, to receive the end of the bag; the folding-blade, which assists to smooth the bag at its upper end to permit the lip-turning device to perform its function; the clamp to hold the bag against the folding-bed; and, lastly, a clamp to hold the bag in position at the lower end of the folding-bed before it is released or discharged from the machine. By such employment of the various elements mentioned the bags in rapid succession are moved from the place where they are filled to the folding-bed, where each bag is separately held by the folding-blade while being rotated to the place of discharge. According to the specification the patentee did not limit himself to the exact folding mechanism shown, but reserved the right to use equivalents. The proofs show that in the defendant's machine are found the folding-blade and the folding-bed in combination with the elements specifically mentioned in claim 53. The defendant in fact uses a guide-box, a long finger (instead of tapering) to open the bags, and follower device, means to put the bag-opener in motion, as well as the device for turning the lip of the bag for the purpose of sealing it. The defendant contends that these elements are found in the patents to Hill, Hammersley, and Brown. An examination of the claims and the proofs, however, as already intimated, leads to the conclusion that the combination of devices are distinguishable from the elements of the prior art. Therefore, notwithstanding the change of form adopted by defendant, he must be held to infringe.

Stress is laid by the defendant upon the point that the bag-presenting mechanism, consisting of a guide-box and follower-device, is old, appearing in the patents to Brown, Hammersley, and Hill, and that the complainant must therefore be limited to the precise form described in the specification. Bag-presenting mechanism in its generally expressed form is admittedly found in the prior art, but not in the combination claimed. The patent is not limited to a reciprocating guide-box. The specification states:

"A pile of bags to be filled is placed in a suitable guide-box, where they are held between a follower and suitable yielding catches, the guide-box preferably having a reciprocating motion imparted to it to aid in detaching the endmost bag to be filled."

The complainant's guide-box, in practice, is stationary, and the defendant, though not using complainant's precise form, nevertheless employs its equivalent functionally operating in the same manner. The rule, as stated in Bundy Mfg. Co. v. Detroit Time-Register Co., 94 Fed. 524, 36 C. C. A. 375, would seem to apply:

"If the united part effected the same results, and in substantially the same way, as the separate parts before the union, the change is colorable."

See, also, Eames v. Worcester Polytechnic Institute, 123 Fed. 67, 60 C. C. A. 37; Westinghouse v. Boyden, 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136.

There is evidence showing that complainant in the operation of its bag-filler uses what is known as a bag-spreading device, which enters the bag, the spreaders moving laterally away from each other within the bag towards its side edges. Though claimed to be an

important feature in aid of the bag-opening device, the specification declares that the spreaders may be entirely omitted. Complainant contends that claims 11 and 12 are infringed by a triangular piece of metal located between the upper end of the bag-opener and the lower end of the funnel. The triangular plate of defendant's machine probably gives some assistance in spreading the bag, but I am of opinion that the bag is principally spread open by the action of the funnel, and therefore these claims of the Cummings patent are not infringed by the defendant.

In considering the question of infringement it must be borne in mind that the patent to Cummings is of much practical value and is primary in its character in the sense that the inventor succeeded where others have failed. The practical application of his conception seems to have been the final step leading from failure to success. As already observed, no prior inventor appears to have assembled the mechanical parts and details, including the actuating means to lower the funnel and bag-opener, in such a manner as to insure the production of a successful bag-filling machine. The invention probably cannot be strictly termed a pioneer invention in the sense that Cummings produced a wholly novel apparatus. Nevertheless, the value of the machine and its commercial success entitle the claims to a construction broad enough to include the essential features of defendant's machine. He has appropriated the essential elements of the complainant's machine which differentiated it from the prior art. The following quotation from Winans v. Denmead, 15 How., at page 340, 14 L. Ed. 717, applies to the construction in question:

"Its substance is a new mode of operation, by means of which a new result is obtained. It is this new mode of operation which gives it the character of an invention, and entitled the inventor to a patent; and this new mode of operation is, in view of the patent law, the thing entitled to protection."

McSherry Mfg. Co. v. Dowagiac Mfg. Co., 101 Fed. 716, 41 C. C. A. 627.

It is not deemed necessary to discuss the other questions presented by the defendant in his brief and on argument. The description and claims of the patent are thought to conform to the statutory requirements, and may be sufficiently understood by the workman skilled in the art.

Defendant's contention that a successful and operative machine could be produced from the various devices of the prior patents is not convincing. I am satisfied that a practically and commercially operative machine would not be presented in the suggested combined machine of any of the patents either in the same or equivalent character. The claim, therefore, that defendant's structure is built upon the devices and details of construction found in the prior art, is without substantial merit. The only difference between defendant's machine and that of complainant, as heretofore indicated, is one of form, and not of substance, and such differences are immaterial in view of the scope of the involved claims to which the complainant, in my judgment, is fairly entitled.

The evidence fully warrants the conclusion that the practicability and value of defendant's bag-filling machine is due to the invention

covered by the Cummings and Brown patents in suit. For the foregoing reasons the claims of complainant's patents involved in this suit, except claims 11 and 12 of the Cummings patent, are thought to be infringed by defendant's device, and a decree for the usual injunction and accounting may be entered, with costs.