PAGE MACH. CO. v. DOW, JONES & CO. et al.

(Circuit Court, S. D. New York. April 3, 1908. On Rehearing, June 20, 1908.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CLUTCH MECHANISM.
   The Joy patent No. 786,294, for a clutch mechanism intended particularly for use in printing-telegraph machines, was not anticipated, and discloses patentable invention. Also *held* infringed.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PRINTING-TELEGRAPH MACHINE.
   The Merritt and Joy patent No. 558,506, for a printing-telegraph machine, claim 6, is void for lack of invention.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

3. PATENTS (§ 170*)—CONSTRUCTION—SCOPE OF INVENTION—PRIOR ART.
   That a structure is within the terms of a patent does not establish infringement, but the scope of the patent must be determined from the state of the prior art.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 245; Dec. Dig. § 170.*]

4. PATENTS (§ 328)—VALIDITY AND INFRINGEMENT—PRINTING-TELEGRAPH RECEIVER.
   The Joy patent No. 780,664, for a printing-telegraph receiver covering mechanism for line spacing under constant stress, driven by a continuously revolving shaft, was not anticipated, and discloses invention in view of the improvement made by the device in the effectiveness of the machine. Claims 1, 2, 3, 4, 5, 6, 9, 11, 23, 24, 26, 27, and 30, *held* infringed. Claim 12 *held* too broad, and void for anticipation, and claim 15 not infringed.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Gifford & Bull (Livingston Gifford and J. Edgar Bull, of counsel), for complainant.

Emerson R. Newell and Brown & Seward, for defendants.

HAZEL, District Judge. This action is brought to enjoin infringement by the defendant of letters patent No. 558,506, dated April 21, 1896, issued to Benjamin F. Merritt and John M. Joy, for printing-telegraph, No. 780,664, dated January 24, 1905, to John M. Joy, for printing-telegraph receiver, and No. 786,294, dated April 4, 1905, to John M. Joy, for clutch mechanism. These improvement patents are embodied in printing-telegraph machines known as page-tickers, which

---

are chiefly used in broker's offices and banks, and electrically record on sheets of paper news items relating to stock operations, fluctuations of the market, etc. The main defenses are that the patents are anticipated, and want of patentable novelty.

The invention for clutch mechanism, which will be first discussed, is not limited to any special form or class of machinery. Several modified structures of equivalent arrangements are shown in the drawings, but it is enough to consider fig. 3, which is the particular form of device alleged to be infringed by the defendant. Complainant emphasizes that part of the specification which declares the object of the patentee to be—

"to improve upon such forms of driving-clutches and prevent more than the desired stress being placed upon the spring or springs in the operation of the clutch."

I think the improvement discloses patentable invention. A clutch mechanism for connecting and disconnecting parts of a mechanism or winding up a spring while other parts are assembled or juxtaposed is very old. It was also old to use and wind up a spring between a constantly rotating driving shaft and intermittently revolving type-wheel, and, moreover, the use of a friction clutch to prevent overwinding was common. The improvement in suit, however, is designed to secure a uniform strain on the spiral spring, and thereby absolutely prevent the breaking or overwinding of the spring. The new element which achieved this result was a continuously revolving driving wheel mounted upon a rotating shaft, and a spring wound around and interposed between the driven shaft and the follower disk. The specification describes a clutch mechanism having a driving wheel and shoulder which comes in contact with a projection on the disk. The sleeves or shafts turn upon a stud having a ratchet wheel which comes in contact with a pawl on the disk; the latter in the revolutions winds up a spring which encircles the driven shaft lengthwise, and then travels speedily longitudinally on the shaft. When the revolutions of the disk cause its disconnection from the shoulder of the driving wheel, such revolutions cease. The turning of the shaft then operates to cause the action of the revolving disk until the projection again comes in contact with the shoulder of the driving wheel. By these indicated means the spiral spring around the driven shaft is wound up by the operation of the driving shaft. This results, first, in keeping the driven shaft under constant stress, and, second, in rotating it. No mechanism to deter the spring from overwinding when it reaches a certain tension is shown in the prior art.

In the patent to Parish, No. 373,476, is shown a spring controlled by a friction clutch device, but no means are provided for positively "disconnecting the clutch member when the spring has reached a given tension." Neither the Hitt patent, No. 424,418, nor the Riggs patent, No. 225,421, meets this feature. The Hitt patent shows a way to arrest overwinding the spring of a clock, but clearly it has neither the driven shaft of the patent in suit nor the spring encircling such shaft interposed between it and the follower disk. The clutch member of the Hitt structure, when the spring is under stress, is raised by suitable mechanism, but the driven shaft does not rotate with the driving

shaft when the clutch is raised, and instead of rotating the driving shaft a drum moves around it while the shaft is held rigid by ratchet and pawl. Hence such patent does not suggest a clutch mechanism which operates in different directions with a revolving shaft and spring. The mechanism of the Joy patent, when conjointly used with the patent for printing-telegraph in suit, enables transmitting power from one clutch member to the other to disengage the parts and affect the intermittent motion of the type-wheel.

This pivotal object of the patentee when once recognized, it is thought, will remove any difficulty in concluding that the patentee has progressed the art to a limited degree. The Burry, No. 535,810, and Riggs patents may both be similarly distinguished from the Joy patent. The claims are thought valid, and, as they are construed, infringement is not denied. I do not think the amendment of the claims in the Patent Office requires the application of the doctrine of estoppel.

The Merritt & Joy patent No. 558,506: The sixth claim only is involved. The elements of the combination, while not present in a single prior patent, were commonly known to the printing-telegraph art at the date of the invention. The patent is for a machine which operates intermittently; it has a constantly active electric motor, a friction drive connecting the motor and the recording mechanism, and a device for automatically stopping the rotation of the shafts in "periods of prolonged inactivity." The claim in issue is limited to the mechanism for stopping the motor and to start it, i. e., to open and close the electric contacts to produce the result. Concededly the worm and finger device included in the combination was commonly known, but the patentees claim they were the first to use such a device to separate contacts of an electric switch and to open an electric circuit. It was old in the art to stop an electric motor by opening its circuit. For instance, in the patents to Neal and Eaton, an electric switch arrangement is shown for opening the motor circuit by two spring contacts. The patents to Linville, to Wright, No. 460,328, and to Sheehy disclose type-wheels and rotating shaft together with means for printing; an electric motor being connected to the shaft through a friction device and train of gearing. In the Wright machine is shown a slip connection between the motor and type-wheel, and it has not the worm and lever for stopping the motor. The Odell patent has a universally movable lever with a finger or point on its free end to engage the worm, its purpose being to control the electric circuit and to actuate the lever. In the operation of the Pearce machine, the tape-ticker type of printing-telegraph, a spring motor is stopped and started by mechanism somewhat similar to that employed by the patentees; its spring motor, however, is not connected through a friction device. While the prior art does not specify means for stopping the motor during periods of "prolonged rest," yet, as that element was provided in the claim in suit by simply adjusting a worm and finger device between the motor and the type-wheel shaft, it does not rise to the dignity of invention. Such adaptation called for no special skill; it resulted in no new principle of operation, and was something that the ordinarily skilled mechanic might have done. Joy patent No. 780,664.

The following claims are in litigation: 1, 2, 3, 4, 5, 6, 9, 10, 11, 15, 23, 24, 26, 27, and 30. It will suffice to set forth claim 1, which is thought to be the broadest in scope:

"(1) In a printing-telegraph receiver, the combination of a shaft under constant stress tending to rotate the same, and a type-wheel carried thereby, a type-wheel moving mechanism under constant stress, tending to move the type-wheel forward, a paper-feeding mechanism under constant stress tending to actuate the same, and means for controlling the operation of the type-wheel, the type-wheel moving mechanism, and the paper-feeding mechanism, for substantially the purposes set forth."

It will be observed that the three essential elements are mechanism for (1) rotating the type-wheel, (2) letter spacing, and (3) line spacing, each being under constant stress (claims 1, 2, and 3), to actuate and to control their operation. All the prior page-tickers, including the defendant's construction, embody such elements. Infringement is denied. Concededly these elements in defendant's machine are operated under constant stress from independent sources through the use of separate escapements. The patentee claims that he first devised practical means by which the above-mentioned elements were driven or operated from a single continuously rotating shaft. In his machine he used wound-up springs to impel the revolutions of the motor shaft to put the essential features under constant stress, while in the defendant's construction springs which are not wound up (except the spring that rotates the type-wheel shaft) and friction disks interposed between the motor, and such elements are used to supply the required constant stress. Apparently claim 1 is directly readable upon defendant's structure, but nevertheless reference must be had to the stage of the art to determine its scope. Edison v. American Mutoscope & Biograph Co., 151 Fed. 767, 81 C. C. A. 391; Goodyear Shoe Mach. Co. v. Spaulding (C. C.) 101 Fed. 990.

In the Merritt and Joy patent, No. 558,506, the type-wheel rotating and letter-spacing mechanisms were kept under constant stress, but the line-spacing mechanism was not so maintained, and it appears that the page-ticker constructed under such patent was only moderately successful. The inefficiency of the machine was attributed by the patentee to the fact that the line-spacing mechanism was indirectly operated by the stress of the spring of the letter-spacing mechanism, which stress was not continuous or controlled by a separate escapement resulting in excessive wear upon the gears and in retarding the motion of the friction drives. In this situation the invention in suit was conceived. According to the specification, it was the inventor's object to increase the rate of speed at which the printing-telegraph receiver "may be worked with a minimum of power and to produce an improved compact and strong instrument of high efficiency which is not liable to get out of order," and also "to improve the controlling devices of the receiver and render the application of the current for controlling them less wasteful and more certain and efficient in operation." To accomplish these objects, the patentee placed all three essential elements under constant stress, and enabled their operation and control from a single source of power. He supplied a continuously rotating driving shaft to directly and separately operate the type-wheel, letter-

spacing and line-spacing mechanisms, and hold them intermittently at rest, though they are under constant stress, by what are known as independent escapements electrically operated from a current passing over the line wire. The patents to Wright, Sheehy, and Burry were contributions to the general state of the art, but they disclose nothing to indicate to me, nor does the record show, that Joy has not by the patent under discussion improved the page-ticker. It required some degree of the inventive faculty to improve the earlier machines so that they would electrically transmit the news without interruption or break. It is not claimed that the prior devices were failures in that they were incapable of transmitting news, nor was the Merritt and Joy machine wholly impracticable or unusable. In machines of this character, however, slight defects or impairments affecting the periodic rests or motion of rotatable parts may temporarily render them inoperative. It was highly important that such temporary impracticableness should be obliterated or reduced to a minimum. The Wright machine, upon which defendant lays stress, has two sources of power, and the three essential elements of the machine apparently were not under constant stress nor operated by an intermittently revolving shaft. In the Burry patent the line-spacing device was concededly under continuous stress, but its operation was by the line circuit, and the other essentials by a local battery. The prior structures in evidence do not suggest keeping the main driving shaft in continuous revolution to the end that the essentials be given desired motion. Hence, in my estimation, the term "constant stress" cannot justly be given an illiberal construction. Although the desired stress or energy of the defendant's structure is not entirely dependent upon the springs used therein, nevertheless the friction disks interposed between the essential features and the unwound springs operate precisely as the wound-up springs of complainant's structure. Defendant's expert witness Wright. on cross-examination. defines the term "constant stress" as follows:

"Without considering the patent in suit at all or Mr. Foster's testimony, I would consider 'constant stress' to be a term broad enough to cover any device which tended to rotate by means of springs or weights either with or without friction devices, or friction devices without the weights or springs."

And from his testimony it appears that such definition of the term is not strained by the inclusion therein of any device which continuously tends to produce motion but which is restrained from so doing by an escapement. I conclude, therefore, that the term "constant stress" as used in the patent is not limited simply to such stress or power as is imparted by complainant's specific arrangement.

The position of the defendant is that, as the Burry structure has a line-spacing mechanism and the Merritt & Joy structure the type-wheel rotating and letter-spacing mechanisms under constant stress, it was not invention to construct the machine with the additional mechanism for line-spacing under constant stress; in short, that to make such alteration in the prior art to embody different elemental parts found in prior machines to achieve the result of complainant's invention was a mere mechanical expedient. This objection, however, is overcome by the fact that in all prior machines the defects already spoken of were deterrent of complete success. As said by the Circuit

Court of Appeals for this Circuit in George Frost Co. v. Cohen, 119 Fed. 505, 56 C. C. A. 185:

"That its selection was not an obvious thing is persuasively and cogently shown by the fact that during many years numerous inventors were trying to remedy the defects in the old device, and it did not occur to them how simply and satisfactorily this could be done by making the button of rubber or some other elastic or yielding material. Its employment in the device of the patent was a new use, and imparted to the device a remarkable efficiency, as compared with that of the best type of former devices."

Claims 9 to 12, 15, 23, 24, 26, 27, and 30, which relate to the details of mechanism and operations for line-spacing, may be briefly considered. It is unnecessary to set them forth in extenso; the ninth will give a sufficient understanding of them. It reads:

"(9) In a printing-telegraph receiver, the combination of a paper-feeding mechanism, under constant stress tending to actuate it, a type-wheel and means for actuating the same, and means controlled by the rotative position of the type-wheel for releasing said paper-feeding mechanism, substantially as and for the purposes set forth."

Defendant contends that these claims are anticipated by the Wright patents, Nos. 460,328 and 460,458, and by the Merritt & Joy patent to which reference has been made, but I am persuaded to a different conclusion. As already stated, the patent in suit is for the mechanism of line-spacing under constant stress and a continuously revolving driven shaft by which said mechanism is driven. Neither the Wright nor the Merritt & Joy machines are similarly operated. Claims 9, 10, and 11 are for releasing the line-spacing mechanism, controlled, as stated in the claims, by the "rotative position of the type-wheel." It is not perceived that in any of the Wright patents a similar method is shown to effectuate the release of such mechanism. The projecting pin (claim 15) is not on the type-wheel shaft, as in complainant's machine, but is on a separate spindle, which is stationary during the revolution of the type-wheel and which rotates when the type-wheel shaft is at rest. In the earlier Wright patent the rotatable shaft moves intermittently, and it certainly has not the "constantly-acting source of power" mentioned in claim 12 of the patent in suit.

Discussion of claims 15, 23, 24, 26, 27, and 30 is thought unnecessary, for it is not seriously disputed that they cover details of construction which may be differentiated from those of the Wright patents. It is undeniable that similarities are present between the mechanism of the Joy patent under consideration and prior structures, but even though well-known elements are included in the combination, it is believed that they were assembled to produce a new and useful result. The effectiveness of the page-ticker machine was increased by the adaptation by the patentee of the line-spacing mechanism under constant stress and in the manner set forth in the claims, and hence such combination evidences invention. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Brown Bag Filling Machine Co. v. Drohen (C. C.) 140 Fed. 97, affirmed 148 Fed. 985, 78 C. C. A. 614.

The defendant's construction is not built upon the details contained in the exhibits offered to anticipate the patent in suit. The differences

in defendant's structure are not so substantial in character as to justify denying to the patentee the protection of the patent laws. The defendant achieves the identical result by the same or by equivalent means. In view of the scope to which I think the claims in issue are fairly entitled, the complainant should have a decree for an injunction and accounting against the defendant Dow, Jones & Co., but not against its president. Such decree may be entered adjudging the Joy patent No. 786,294, for clutch mechanism, and claims 1, 2, 3, 4, 5, 6, 9, 10, 11, 15, 23, 24, 26, 27, and 30, of Joy patent No. 780,664, for printing-telegraph receiver, valid, and infringed by the defendant, and claim 6 of the Merritt & Joy patent No. 558,506, for improvement in printing-telegraph receiver, void for want of patentable novelty. As the complainant has not succeeded in establishing the liability of the individual defendants, and as one of the patents in controversy is deemed invalid, there will be no costs awarded or disbursements allowed against either party.

## On Rehearing.

On rehearing as to claims 4, 5, 6, 12, 15, 23, and 30 of the Joy patent No. 780.664, I make the following modifications in my decision heretofore filed herein:

The line-spacing mechanism of the prior art was not strictly under constant stress, in that its motion was not caused by a friction drive connected with the motor, and it was not controlled by a separate escapement. The movements of the line-spacing mechanism of the prior art were incited by the energy or power of the spring in the letter-spacing mechanism. In the judgment of the patentee it was important to put the three essential mechanisms under constant stress to attain the desired intermittent movements independently of each other, the idea being to avoid the waiting by one element for the action of the other and to operate each element separately.

Claims 4 to 6 in controversy do not include in the combination the words "constant stress" as specified in claims 1 to 3, but, nevertheless, the functions of the three mechanisms, the line-spacing, paper-feeding, and letter-spacing, consist in the structural ability to actuate each thereof independently of the other, and this result could only be secured by following the procedure pointed out in the specification. This was accomplished by carefully arranging the mechanisms so as to enable driving each of them from a single local battery and rotating the shaft by a friction drive connected therewith, from which the required stress was obtained to actuate such elements, and, moreover, to successfully operate them escapements were provided for each element. All these features are embodied in the defendant's machine. It makes no difference whether a friction drive connected to the driven shaft or a clutch mechanism provides the constant stress to actuate the essential mechanisms, for, as already stated, the term "constant stress" includes any device which attains the object of the claims under consideration.

Claim 12, which is not limited to any mechanism under constant stress is thought broad enough to include the prior Wright patent, No. 466,858. If the words "constantly acting source of power" meant

the continuously revolving driven shaft and not, as claimed by the defendant, the electric motor, I would not alter my previous holding regarding this claim, but that the "constantly acting source of power" is in fact the motor appears clearly by Mr. Foster's testimony. In answer to a cross-question, he testified that the motor which drives the train of gears and the shaft 33 is the constantly acting source of power. He also testified that in the Wright machine No. 3 the paper was continuously fed without feeding the type-wheel as long as the motor continued to act. Although the Wright machine does not disclose the independent mechanism under constant stress of the patent in suit nor the separate escapements, yet in its operation it employs a vertical shaft under constant stress, with an escapement by which its rotation is intermittently stopped, and by which the paper is continuously fed to the type-wheel by motor power. It is claimed by complainant that the constantly acting source of power of claim 12 was the continuously revolving driven shaft; but complainant's expert witness, Mr. Foster, was of a different opinion, and I therefore conclude that claim 12 is anticipated by the Wright machine No. 3.

Claim 15 refers to the type-wheel and shaft, together with two bell-crank levers which are arranged to form a toggle, and a spring connecting the levers. The defendant's machine does not have complainant's toggle nor spring connecting the two bell-crank levers; it uses a spring which operates to stiffen the toggle arrangement, while in complainant's structure the spring apparently operates to break the toggle. Inasmuch as the claim does not specify the feature of line-spacing, and in view of the prior Merritt & Joy patent No. 558,506, it is not entitled to a scope of such latitude as to include the defendant's construction.

Claim 23 is for a combination of the paper-feeding mechanism controlled by a rock shaft and levers. The claim omits to specify the feature of constant stress, in connection with the paper-feeding mechanism, although it specifies that the levers are under constant stress. This claim, in my judgment, must be limited to a paper-feeding mechanism under constant stress of friction connection or its equivalent, and, reading such limitation into the claim, the defendant infringes the same.

Claim 30 is for a combination of paper-feeding mechanism and toggle-acting lever under constant stress of friction connection. If we read into the claim by implication, as I think we must, the limitation of claim 23, such claim is not invalid, and, in view of the evident betterment of a concededly imperfect apparatus, such claim is believed to involve invention.

For the foregoing reasons, the decree must recite the infringement of all the involved claims of patent No. 780,664, except claims 12 and 15.