## SHOTEY v. APEX BROACH CO.
### Civ. A. No. 4581.

United States District Court
E. D. Michigan, S. D.
April 6, 1949.

Samuel Weisman, of Detroit, Mich., for plaintiff.

Francis D. Hardesty, of Detroit, Mich., for defendant.

LEVIN, District Judge.

This is a suit for infringement of Letters Patent No. 1,912,410 issued to plaintiff on June 6, 1933, for a device for dressing or trimming the edges of a grinding wheel to a contour suitable for grinding gear teeth. Defendant denies infringement and alleges that all of the claims of the patent are invalid.

Production requirements make it necessary to finish gears with the highest degree of accuracy possible. Devices for trimming surfaces of abrasive wheels to be utilized in grinding gear teeth were not new at the time plaintiff's patent was granted, but accuracy in the cutting operation had not been attained. The gear teeth were finished roughly and then brought to the desired form by the slow and costly procedure of alternate grinding and testing, which required a high degree of skill.

A study was made over a period of several years at considerable cost to develop a gear dresser which would meet the present day requisites of precision. Plaintiff's witness, Kondur, a skilled mechanic, constructed gear dressers according to the specifications of the prior art patents, but none of such disclosures obviated the laborious and expensive "cut and try" method of finishing after the rough shaping of the grinding wheel. The looseness between the various parts, and the yielding of the mechanism controlling the tool carrier, resulted in deflections from the true cutting path. The problem, then, was to provide a device of firm mechanical construction which would accurately produce a given form on a grinding wheel, so that it could then be introduced into the spaces between the teeth of a roughly shaped broach for internal gears or between the teeth of spur gear and accurately form the involute outlines of the teeth.

A general description of the invention set out in the patent is as follows:

"The invention embodies a fixed circular disc or arcuate member having a radius of curvature equal to the radius of the base circle of the gear to be ground. Upon this member is mounted a frame lying tangential thereto and adapted to be turned on the member while maintaining its tangency. A given point on this frame therefor describes the involute curve of the base circle. The frame in fact is utilized as the holder for a tool which preferably has its point lying in the plane of tangency so that this point also describes the involute curve. When the grinding wheel is brought against the point and the frame turned about the arcuate member, the point cuts the involute curve into the grinding wheel.

"The invention also embodies means for shifting the tool point from one position to another, these positions being such that involute surfaces are cut on both faces of the wheel, thus enabling the wheel to grind both sides of an inter-dental space at the same time."

The patent contains four claims.[1] An important contribution disclosed in plaintiff's patent is the clamping mechanism em-

[1] "1. A device for dressing grinding wheels comprising a base, an arcuate member carried thereby, a rigid arm pivoted to said base at the center of said arcuate member, a clamping member adjustably mounted in said arm, a tool holder clamped tangentially upon the periphery of said arcuate member by said clamping member, and a dressing tool carried by said holder, said tool holder having its working point disposed in the plane of tangency of said holder to said arcuate member.

"2. A device for dressing grinding wheels comprising a base, an arcuate member carried thereby, a rigid arm pivoted to said base at the center of said arcuate member, a clamping member adjustably mounted in said arm, a tool holder clamped tangentially upon the periphery of said arcuate member by said clamping member, and a dressing tool carried by said holder, said tool holder having its working point disposed in the plane of tangency of said holder to said arcuate member, said point being disposed at one side of a plane normal to said plane of tangency, said point being adjustable from one to the other of two positions symmetrical with respect to said normal plane.

"3. A device for dressing grinding wheels comprising a base, an arcuate member movably carried thereby, a rigid clamping member pivoted to said base at the center of said arcuate member, a tool holder clamped tangentially upon the periphery of said arcuate member by said clamping member, and a dressing tool carried by said holder, said tool being off-

ployed, wherein the tangential bar is held against the base circle by a rigid arm having a roller bearing which may be tightened by a set screw against the tangential bar, thus holding the bar firmly against the base circle and carrying the cutting tool through an involute curve in a true path. In the earlier devices, the tangential bar tended to slip under the pressure of the grinding operation because of the flexibility of the means used to hold the bar in place.

In practice, the plaintiff's device eliminated the laborious and costly procedure previously encountered. Even in the work of the large surfaces or long tooth gears the involute surfaces formed upon the grinding wheel by means of the machine satisfied the requirements of the job to an accuracy within .0002 and, in some cases, .0001 of an inch, thus representing a very real advance in the art.

On the question of validity, the principal prior art cited by defendant against Claims 1, 2 and 3 of the patent in suit are the Slocum patents, No. 1,729,460 and No. 1,795,901, and the Lees patent No. 1,634,328. The earlier Slocum device disclosed in patent No. 1,729,460 fell far short of producing the desired result because of the use of flexible straps for maintaining the tangential relation of the tool carrier to the arcuate member. The subsequently issued Slocum patent No. 1,795,901 shows the tangent bar engaging an arcuate member and fastened thereto by a system of wires. In actual use this Slocum device was found unsatisfactory by reason of the flexibility of the wires used to clamp the tangent bar against the disc, and because the device consisted of many parts, the necessary clearance between such parts caused inaccuracies to accumulate at the tool point to such an extent that the machine was unsatisfactory for practical purposes. "A prior patent which fails to solve the problem toward which the in-

ventor's efforts are directed does not anticipate a subsequent patent which successfully solves the problem and effectually accomplishes the desired result." Williams Iron Works v. Hughes Tool Co., 10 Cir., 109 F.2d 500, 510.

The file wrapper discloses that the Slocum patent No. 1,795,901 was carefully considered by the Patent Office Examiner during the prosecution of plaintiff's application. After an initial rejection, the applicant stated (in his Amendment A) that: "Applicant's device was designed principally to overcome the use of the flexible straps of the prior art devices for maintaining the desired tangential relation of the tool carrier to the arcuate member. These devices are rather difficult to handle and are not constantly accurate. Difficulty is met particularly in making adjustments for various base circle radii because of the loosening and tightening of the wires and the accurate positioning of the tool under these conditions while making an adjustment."

Applicant further pointed out that: "The rigidity of the arm prevents proper displacement of the tool in operation, as distinguished from the flexible bands or wires of the prior art, which, because of their very flexibility and elasticity, are likely to permit undue displacement. However, the simple adjustability of the clamping member in the arm enables adjustment of the mechanism with far greater ease and simplicity than required in the manipulation of the wires of the prior art devices."

In his second action, the Examiner found "that the wire 68 of Slocum is the full equivalent of the rigid arm claimed." Applicant again responded with a denial as to this finding and pointed out that the "wires had a tendency to yield and also to permit lateral wobbling of the tangent bar and tool carrier." He further pointed out that "due to applicant's pivoted rigid bar 3

---

set axially from said arcuate member.

"4. A device for dressing grinding wheels comprising a base, an arcuate member carried thereby, a clamping member pivoted to said base at the center of said arcuate member, a tool holder clamped tangentially upon the periphery of said arcuate member by said clamping member, a dressing tool carried by said holder, and a centering pin engageable with said tool holder for locating the same during adjustment of said clamping member."

with clamping means therein, this probability of error was not present." After reconsideration, the Examiner allowed the claims of the patent as issued. The presumption of validity of a patent is strengthened where the Patent Office has closely examined the prior art. Modern Products Supply Co. v. Drachenberg, 6 Cir., 152 F.2d 203, 205.

The Lees patent No. 1,634,328 covers a gear checker rather than a dresser, and is not built or designed to perform the function of imparting a form on a wheel. The Lees device, moreover, has a cushioning or yielding spring which would be undesirable in a dresser and presents the difficulty that it would not hold the tangent bar and dressing tool in a true path. Defendant indulges in considerable speculation in an effort to show that with certain changes and the removal of the spring, the Lees device would anticipate plaintiff's invention. The question of what might result by a rebuilding of the Lees gear checker to adapt it to perform the same function as a dresser for a grinding wheel, is not a valid basis for the defense of anticipation.

In Bianchi v. Barili, 9 Cir., 168 F.2d 793, 796, the court quoting from Topliff v. Topliff et al., 145 U.S. 156, 12 S.Ct. 825, 36 L. Ed. 658, held: "It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions."

Claim 4 of the patent in suit relates to the centering pin or locating device for maintaining the tool holder in a correct position during adjustment of the clamping member. Defendant cites patents issued to Lund No. 1,080,641, Baldridge No. 1,154,-596, Stenquist No. 1,280,577, Bouslog No. 1,649,093 and Halborg No. 1,907,065 in an effort to show that locating pins are old in many different arts. Only two of these patents, Bouslog and Halborg pertain to dressers. Halborg does not have a centering pin, and with regard to Bouslog, the Shotey locating or centering pin differs in construction and utility. Bouslog shows a center pin 8 around which the entire assembly turns. It does not engage the tool holder "for locating the same during adjustment of the clamping member" as claimed by Shotey.

Defendant contends that plaintiff's device is not new, that this is a crowded art, and that all of the elements of plaintiff's device are old and contained in the prior art.

"Even though an invention be not a pioneer, if it marks a decided step in the art, it will be entitled to the benefit of the rule of equivalents, though not in so liberal a degree as if the invention were of a primary character. (Citing cases.) Thus a patent which is an improvement on an old machine may be very meritorious, and entitled to liberal treatment. (Citing cases.) * * * Where an invention undoubtedly marks a substantial advance in the art, the patent is to be given a reasonably liberal construction so as to secure to inventors the rewards to which they are entitled." 2 Walker on Patents, Deller's Ed.1937, Sec. 247, page 1212.

"It is also settled in the law of patents that the fact that all of the elements entering into a combination are old does not necessarily negative the existence of invention. (Citing cases.) Such a combination may be patentable invention if it produces a new result, or an old result in a new or more efficient way. (Citing cases.)" Levin v. Coe, 76 U.S.App.D.C. 347, 132 F.2d 589, 596.

This principle was recently restated in Harris v. National Machine Works, 10 Cir., 171 F.2d 85, 88:

"At the time Gerner conceived his device, sleeves containing spaced bearings and oil seals were well known in the art. Moreover, viewed in retrospect, Gerner's conception seems comparatively simple. But, a new combination of old elements may amount to invention and the fact that, viewed in retrospect, a conception seems simple, does not justify denial of inventive genius where the need for the device long existed and the solution of the problem did not occur either to mechanics skilled in the art or to experts in the automotive engineering field. (Citing cases.) * * *

"While it is a combination of old elements, it accomplishes, if not a new, an old result in a more facile, economical, and efficient way in a particular environment which presented peculiar and difficult problems. None of the sleeves containing spaced bearings and oil seals disclosed in the prior art was designed for a solution of the problem accomplished by Gerner's device."

 The employment by the plaintiff of a new type of clamping mechanism whereby the tangential bar was held firmly against the base circle thus eliminating slippage and resulting inaccuracies, and curtailing the time required for the operation to a minimum constituted a new and useful result. Tested by the ingredients of patentability discussed in O'Leary et al. v. Liggett Drug Co., 6 Cir., 150 F.2d 656, the court finds that the plaintiff's device comes within the scope of a patentable invention.

With respect to the issue of infringement, plaintiff contends that all four of the claims of the patent in suit read upon the accused device manufactured and sold by the defendant. The parties have agreed that the accused device is substantially disclosed in the Headbloom patent No. 2,274,959 covering a wheel dressing fixture, issued to an officer of the defendant corporation nine years subsequent to the granting of plaintiff's patent. Assuming that Headbloom may have made a patentable improvement, this is immaterial on the question of the defendant's use of the invention disclosed in the plaintiff's patent. As stated in Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 328, 48 S.Ct. 170, 173, 72 L.Ed. 298, "It is well established that an improver cannot appropriate the basic patent of another, and that the improver without a license is an infringer, and may be sued as such. (Citing cases.)"

The defendant denies that any of the claims of the patent read upon defendant's machine. The defense is directed particularly to Claims 1 and 2 and asserts that there is a difference in the structure of the defendant's machine for the principal reason that the language of Claims 1 and 2 describes a clamping member mounted "in" the arm whereas the accused device shows a clamping member mounted "on" the arm. This is a "non-essential reversal" of parts and cannot avoid infringement. Montgomery Ward & Co. v. Clair et al., 8 Cir., 123 F.2d 878. The function of the clamping member whether mounted in or on the arm being precisely the same in each machine, there is such substantial identity of structure as to constitute infringement.

"Except where form is of the essence of the invention, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result,' Union Paper-Bag Machine Company v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935, and mere colorable departures do not avoid infringement, McCormick v. Talcott, 20 How. 402, 405, 15 L.Ed. 930." E. H. Bardes Range & Foundry Co. v. American Engineering Co., 6 Cir., 109 F.2d 696, 698.

The court had the benefit of examinations of both machines. Although somewhat different in appearance from plaintiff's machine, the court is satisfied the accused device infringes all the claims of the plaintiff's patent.

The plaintiff may have a decree with the usual provision for an accounting.