W. B. DOWLESS, Lumberton Manufacturing Company, Alton A. Price and E. D. Lennon, Plaintiffs,

v.

Charlie J. HOOKS, Defendant.

Civ. No. 477.

United States District Court, E. D. North Carolina, Wilmington Division.

Mar. 24, 1954.

See also, D.C., 111 F.Supp. 812.

McLean & Stacy, Lumberton, N. C., I. C. Wright, Wilmington, N. C., A. Harry Crowell, Washington, D. C., for plaintiffs.

D. Jack Hooks, Powell & Powell, Whiteville, N. C., A. Yates Dowell, Washington, D. C., for defendant.

GILLIAM, District Judge.

This case arose under the patent laws of the United States, and W. B. Dowless, et al., plaintiffs, seek to enjoin defendant Hooks from further infringement on patents granted to Dowless. W. B. Dowless, et al., having filed a motion for a new trial and for amendment of the findings of fact and of the judgment, and to alter and amend the said judgment, and to set aside certain findings of fact and conclusions of law and the judgment entered herein,—the Court makes the following findings of fact and conclusions of law, to-wit:

Findings of Fact

1. On November 26, 1940, Dowless was granted U. S. Patent No. 2,223,301 for "Improvement in Tobacco Drying and Curing Means." On July 6, 1948, he was granted U. S. Patent No. 2,444,814 for an additional improvement in drying and curing means, this patent having been applied for November 19, 1945.

. 2. By separate agreements dated November 1, 1947 and November 13, 1950, Dowless assigned to E. D. Lennon and A. A. Price the sole and exclusive right to make, use and vend a curer bearing the trademark "Dowless Tobacco Curer", together with complete title and interest in and to the two patents above named and such amendments and improvements as Dowless may secure for the same.

3. On August 5, 1947, Hooks filed patent application Serial No. 766,407 for improvement in heating burner for curing tobacco. This application, consisting of six claims, was rejected in full by the patent examiner in a communication bearing date May 5, 1948. On September 22, 1948, Hooks, through his attorneys, filed an application amendment cancelling the initial six claims and adding five new claims. The amended application was rejected in full by a communication bearing date May 19, 1949. The five additional claims were rejected as fully met in Dowless patent 2,444,814 and another. The Hooks application was directed to a two-piece heating chamber, a one-piece burner and a downdraft tube equipped with a spacer bar.

4. From the certified copy of the records of the U. S. Patent Office regarding the File Wrapper and Contents of the application by Hooks, it appears that no further amendment was offered subsequent to the rejection of May 19, 1949; and the application was considered abandoned.

5. Dowless and others, as plaintiffs, seek to enjoin Hooks from further infringement on the Dowless patents; and Hooks by way of defense denies infringement and contends: 1. That the Dowless structures had been in public use in this country for more than a year before the Dowless application was filed; 2. That the Dowless patents are void for that they disclose no patentable invention over the state of the art as known and practiced prior to the time the Dowless applications were filed; 3. That the Dowless structures had been patented or described in a printed publication prior to Dowless' supposed invention thereof.

98

6. It is at once obvious that the Hooks burner is so entirely different from the disclosures of the Dowless patent 2,223,301 that the Dowless claim of infringement on that patent is here denied without further consideration.

7. There are three claims in the Dowless patent 2,444,814; however, so far as defenses here pleaded are concerned, those claims are essentially the same and only claims 2 and 3 will be examined. They are as follows: "2. In a tobacco curing system, a burner comprising a substantially tubular housing closed at one end and open at the other, a fuel nozzle adjacent to the bottom of said housing and formed of a hollow body having a plurality of upwardly and outwardly directed jet openings, an air inlet tube extending into said housing through the top thereof and terminating above said nozzle, a diametrically disposed bar carried by the lower end of said tube, said bar having a central opening, and an upwardly convergent conical pin carried by said nozzle coaxially thereof engaging in said opening for supporting said tube with the lower end thereof spaced above said nozzle out of the path of the fuel ejected through said jet openings"; "3. In a device as described, a tubular conduit establishing a line of flow of hot flames, a fuel burner at one end of said conduit, said burner comprising a substantially tubular housing closed at one end and open at the other, a fuel nozzle adjacent to the bottoms of said housing and formed of a hollow body having a plurality of upwardly and outwardly directed jet openings, an air tube disposed downwardly in said housing and extending diametrically almost across said conduit with its air discharge and in close spaced proximity to said nozzle, a centrally apertured bar in the lower end of said tube, a conical pin on said nozzle engaging in the opening of said bar for supporting said tube thereabove, and a baffle plate extending upwardly from the bottom of said housing at the open end thereof for angularly diverting into said conduit a flow of the hot flames generated at the confluence of the burner gases and the air stream discharged from said tube."

8. The essential features of the invention claimed lie in the specific construction of the burner nozzle and its related parts, more particularly the cone shaped upper portion of the burner nozzle which acts not merely as a support for the drowndraft tube, but also as a deflector for the air coming down through the tube, whereby the tube is spaced a proper distance from the burner nozzle and the air comes unobstructedly down through the tube to impinge against the sides of the cone. The point of the cone acts as a central supporting point on which a crossbar fixed across the bottom of the tube rests to spacedly support the tube. The air coming down through the tube is deflected evenly by the sides of the cone and the holes in the nozzle being arranged at an angle around the edge of the burner nozzle, the combustion of the oil vapor from the nozzles takes place in the form of a ring of fire outside of the bottom edge of the tube, whereby the formation of soot or soft carbon deposit on the surface of the burner nozzle and around the oil vapor jet openings is entirely eliminated or to such substantial extent that any deposit is negligible and of insufficient amount to cause an explosion.

9. It is not questioned by this Court that Dowless has developed an operative, useful and marketable structure. And in that there were not introduced in evidence the claims and disclosures of patents cited as references for patent 2,-444,814, it is not questioned that that patent constituted invention in the art as manifested by prior patents issued. However, the Court does question whether the patent constitutes invention or mere mechanical skill in the improvement of structures not patented but in public use and revealing the state of the art.

Dowless presented in evidence an unpatented burner which he admittedly was selling in 1944. Specifically, those sales are found to have taken place prior to the curing season of 1944. This burner

is structurally and functionally different from that described in patent 2,444,814; though there is some similarity of the construction.

The 1944 burner is cylindrical in shape, hollow, and provided with a threaded opening through its base to the hollow chamber within for connection with a fuel supply line. It is used in connection with a downdraft tube for air intake. The burner and the downdraft tube are maintained in a definite spaced relation by a rod or bar soldered or welded diametrically across the flat upper surface of the burner, the outer ends of this rod being anchored by soldering or welding to the inner surface of a larger circular sleeve or collar which in turn receives the lower extremity of a downdraft tube smaller in diameter than the sleeve or collar, the downdraft tube resting on the upper surface of the diametrically fixed rod. The outer and rounded surface of the cylindrical burner is equipped with upwardly and outwardly arranged orifices or jets which connect with the hollow chamber within and through which the generated fuel passes for ignition. These jets lie approximately one inch from the bottom extremity of the downdraft tube as it rests on the diametrically fixed rod; and the jets are so situated as to direct the point of ignition, the flow of hot air and combustion products out of the path of the cool air descending in the downdraft tube.

10. In operation the 1944 burner was not free from defect. The jets around the burner were initially of $\frac{1}{16}$ inch diameter. The 1944 burner was defective, boring larger the third jet opening did not cure the defects. Dowless was, during all this time, working on a new construction, endeavoring to perfect his invention and produce a satisfactory burner. He eventually succeeded and in the spring of 1945 the defective burners were replaced with burners and downdraft tubes as described and shown in the patent 2,444,814, without charge. He did not go into production of the '44 Model until '45. (Pate p. 170)

11. The 1944 burner was abandoned and is no longer in use, having been supplanted by the burner and down-draft tube combination arrangement disclosed in patent 2,444,814. The cone-shaped support of the patented burner accomplished not only the function of supporting the down-draft tube a spaced distance above the burner, it also acted as a symmetrical deflector for the down current of air, thereby creating an even flow and admixture of air all around the burner nozzle. Combustion in the patented device thus takes place to one side of and all around outwardly away from the open end of the down-draft tube. In the 1944 burner there is no disclosure of nor any indication of the concept, of the dual function of support of the down-draft tube, and the even deflected distribution and smooth flow of the air.

■ Under the patent statutes, 35 U.S.C. § 31,[1] the public use which invalidates an invention is a public use of the very invention patented. Goodwin v. Borg-Warner Corp., 6 Cir., 1946, 157 F.2d 267. The invention patented in patent 2,444,814 is not present in the 1944 device.

■ A prior patent which fails to solve the problem toward which the inventor's efforts are directed does not anticipate a subsequent patent which successfully solves the problem and effectually accomplishes the desired result. Shotey v. Apex Broach Co., D.C.Mich. 1949, 83 F.Supp. 807.

■ "Even though an invention was not a pioneer patent, creating a new art, but was an improvement on an old machine, it is entitled to liberal construction to secure to the inventor the reward he deserves, if it was a very useful discovery which has substantially advanced the art." Eibel Process Co. v. Minnesota & Ontario Paper Company, 261 U.

1. Now 35 U.S.C.A. §§ 101, 102.

S. 45, 43 S.Ct. 322, 67 L.Ed. 523—Opinion by Chief Justice Taft.

█ Marked improvement in the performance of a machine sustains a patent.

█ The final step that consummates success is a patentable invention. Specialty Equipment & Machinery Co. v. Zell Motor Car Co., 4 Cir., 193 F.2d 515, 520. Opinion by Judge Parker.

The 1944 device does not suggest the inventive concept of the patent 2,444,814 which embodies the cone support principle of the burner nozzle and hence does not furnish the required clue for a mechanic skilled in the art to perfect the 1944 device.

█ Patent which successfully accomplishes useful result is not void for anticipation of prior use because of prior device, however similar in combination, or close in resemblance to that of patent, where such device was not operative and failed to produce result sought, and which is produced by device of patent. Alexander Anderson, Inc., v. Eastman, D.C.Cal.1936, 16 F.Supp. 513.

██ By the definition provided in Farmers' Mfg. Co. v. Spruks Mfg. Co., 4 Cir., 127 F. 691, the new construction and function as disclosed in patent 2,-444,814 arises to the level of invention. A patent for a device which fails to accomplish the desired end is not an anticipation of one for a device which successfully accomplishes it. Keystone Manufacturing Co. v. Adams, 151 U.S. 139, 144, 14 S.Ct. 295, 38 L.Ed. 103; Smith v. Goodyear Dental Vulcanite Company, 93 U.S. 486, 23 L.Ed. 952, Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658, are all in support of this conclusion. A new combination of elements, even if all are separately old is an invention if the elements are so coordinated as to produce a new and successful result. It was so held by the Circuit Court of Appeals, Fourth Circuit, in Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 F. 845, 48 C.C.A. 72.

Hooks has conceded infringement, but denies that the patent is valid. The 1944 burner is not a prior public use. All of the other defenses contended by Hooks in the infringement case are found to be unsupported by the evidence.

12. The '44 burner with the pump type nozzle failed to operate properly, (1) because of the flat surface on the top of the nozzle against which the air coming in through the down-draft tube was directed. Air striking this flat surface at right angles created turbulence in the bottom of the down-draft tube preventing proper flow and velocity of air across the jet openings in the nozzle about half way down it, resulting in a poor mixture of air and vapor resulting in poor combustion, which caused the formation of soot or soft carbon. This soot eventually restricted the flow of the combustion gases to such an extent that an accumulation of vapor resulted in the combustion chamber and the nearest portion of flues attached thereto and exploded, burning barns.

(2) The shape of the hollow chamber and the contact area between the base of the burner nozzle and the bottom of the combustion chamber on which it rested was not properly designed to operate the nozzle at the correct temperature. The down-draft tube was larger than the burner nozzle. The air coming down the down-draft tube would tend to blow the vapor back into the burner on down against the base of the combustion chamber on which the burner rested—making it too hot.

(3) The impact of the air on this practically flat surface was like if you shoot a bullet directly against the wall it will drop dead or back-fire, whereas if you shoot it against a slanting surface it will ricochet with considerable velocity.

13. The 1945 burner is an invention. The down-draft tube is no larger than the burner nozzle. The air on reaching the bottom of the down-draft tube is deflected down the cone and then at right

angle with velocity across the jet of vapor coming out of the jet openings of the burner nozzle. This results in a swirling motion away from the burner nozzle and in the combustion chamber giving a good mixture of air and vapor and resulting in an efficient combustion burning clean without producing soot or soft carbon. The oil is fed into the bottom of the burner nozzle and spreads over the bottom of the hollow chamber therein vaporizing evenly and flowing out the jet openings in the form of vapor at considerable pressure which is generated in the nozzle by the changing of the liquid oil to a vapor. The temperature of the burner nozzle is controlled by the area of contact between the base of the nozzle and the bottom part of the combustion chamber on which it rests or to which it is attached, resulting in the burner nozzle operating at the proper temperature to give stable combustion and operates efficiently in the lower range of temperatures—i. e., when the heat in the barn is not so high, the flow of air off from the cone gives fresh air to the top of the burner nozzle and blows or deflects the flame and heat away from the burner nozzle, creating a ring of flame outside of and around the burner nozzle —with no turbulence until air hits the jets of vapor, and with no direct flame on the base of the burner nozzle. The mixture of air and oil vapor is what burns.

## Conclusions of Law

1. That Dowless patent No. 2,444,814 is valid as to all three of its claims.

2. That Hooks has infringed the Dowless patent 2,444,814.

3. That Dowless and other plaintiffs are entitled to an injunction permanently enjoining Hooks and all those in privity with him from further infringement of patent 2,444,814.

A judgment is therefore entered accordingly.